UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gerald Janssen, o/b/o Jill       Civil No. 16-3338 (FLN)
Janssen (deceased),
                Plaintiff,

     v.       **ORDER**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

                Defendant.

---

Karl E. Osterhout and Edward C. Olson, for Plaintiff.
Gregory G. Booker, Assistant United States Attorney, for Defendant.

---

      Plaintiff Gerald Janssen seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied Jill Janssen, his now deceased wife's, application for supplemental security income under Title XVI of the Social Security Act. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross-motions for summary judgment. *See* ECF Nos. 16 and 18. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**I. INTRODUCTION**

      On June 24, 2013, Janssen filed an application for supplemental security income ("SSI"). Administrative Record [hereinafter "AR"] 81, ECF No. 14. Janssen alleged that she became disabled on June 1, 2013. AR 189. Janssen application was denied initially and again on reconsideration. AR 10–23, 1–5. On April 28, 2015, an administrative hearing was held before Administrative Law Judge

("ALJ") Michael D. Quayle. AR 40–61. On February 2, 2012, the ALJ denied Janssen's applications for SSI. AR 62–72. On January 9, 2013, the SSA Appeals Council denied Janssen's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 78–80, 5; *see* 20 C.F.R. § 404.981. On October 3, 2016, Janssen commenced this civil action, seeking a remand for further proceedings pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl., ECF No. 1.

## II. STATEMENT OF FACTS

### A. Background

Janssen was 51 years old when she filed her applications for SSI. AR 81. Janssen claimed that the following severe impairments prevented her from securing and maintaining competitive employment: depression, anxiety, back problems, and kidney problems. AR 81–82, 187. Janssen did not have any past relevant work experience, and only identified previously working as a funeral home telemarketer. AR 90, 188, 204. Janssen had a kidney transplant in 2004. *See* AR 187. On October 18, 2016, Jannsen passed away and a motion for substitution of Plaintiff was granted by this Court on November 4, 2016. *See* ECF Nos. 7, 10.

### B. Medical Evidence

#### 1. Physical Impairments

On June 11, 2013, Janssen met her primary care physician Steven Sumey, M.D. complaining of low back pain after slipping in the kitchen. AR 303. During her visit, Dr. Sumey advised Janssen to apply topical heat and do physical therapy at home. *Id*. Janssen visited podiatrist Richard Erbest, DPM, on August 20, 2013, complaining of bilateral painful toes. AR 261. Dr. Erbes diagnosed Janssen with bilateral hammertoes and severe osteoporosis, and told her to obtain a follow-up after getting a bone density scan. AR 263.

Between January and May of 2014, Janssen received treatment for bilateral shoulder pain. AR 519–25. On January 9, 2014, Janssen visited Dr. Sumey at the SMART Clinic for a refill of her pain medication. AR 519. It was noted during her visit that, other than her bilateral shoulder pain, Janssen had no new problems, and was generally feeling well. *Id.* Janssen visited Dr. Sumey again on February 6, 2014, and March 6, 2014, complaining of shoulder pain. AR 521–23. During each visit, Dr. Sumey refilled Janssen's medication, and noted that she was generally feeling well. *Id.*

On August 29, 2014, Janssen visited the FA Fairmont Hospital Emergency Department complaining of general weakness, and fatigue. AR 401. Janssen was diagnosed with a urinary tract infection with sepsis and cystitis. AR 406. During her visit, a CT scan revealed large pericardial effusion, and Janssen was transferred to St. Mary's Rochester for tertiary care. AR 407. On September 4, 2014, Janssen visited the FA Fairmont Hospital with dull abdominal pain and symptoms of nausea and vomiting. AR 418–43. Urinalysis was conducted on Janssen which showed no signs of infection, and she was discharged with a prescription for potassium. *Id.* On January 22, 2015 Janssen again visited FA Fairmont Hospital for abdominal pain. AR 453. Janssen was given pain and nausea medication and discharged on the same day. *Id.* Janssen returned to the hospital on January 26, 2015, with moderate abdominal pain which she stated began six days prior. AR 348. Due to an abnormal EKG, Janssen was transferred to the coronary care unit at Mayo Clinic. AR 386. On January 29, 2015, however, Janssen was discharged and assessed as asymptomatic. *Id.*

On February 2, 2015, Janssen visited Courtney Keith, M.D., complaining of her legs jumping at night causing her difficulty in sleeping. AR 503. Janssen expressed no symptoms of epigastric pain, shortness of breath, or chest pain. *Id.* Dr. Keith encouraged Janssen to increase her hydration, and use of heat and massage for her muscle spasms. AR 504.

On February 5, 2015, Dr. Keith diagnosed Janssen with depression, coronary artery disease with stenting, diabetes, hypertension, hyperlipidemia, and status post kidney transplant. AR 505. Dr. Keith opined that Janssen's conditions were lifelong and that she would not be able to perform any employment in the foreseeable future. *Id.* Dr. Keith also completed a Medical Source Statement on March 11, 2015, providing that Janssen was able to lift less than 10 pounds, and stand and walk less than 2 hours in a 8 hour day, and that Janssen would need to periodically alternate between sitting, standing, and walking. AR 515. Dr. Keith also opined that Janssen required care for walking, and could not kneel, crawl, or crouch. AR 517. Janssen would also be absent from work more than three times a month. *Id.* According to Dr. Keith, these limitations were due to Janssen's chronic kidney disease, status post kidney transplant, hypertension, low back pain (degenerative disc disease), depression, coronary artery disease, and diabetes. AR 515.

**2. Mental Impairments**

In her own self-assessment Janssen provided that she suffered from depression and anxiety. AR 187.

On November 11, 2013, Psychologist, Mark Anderson, P.H.D., completed a Medical Source Statement for Janssen opining on her residual function capacity. AR 292–95. Dr. Anderson diagnosed Janssen with major depressive disorder, recurrent, moderate, social isolation and unemployment. AR 292. Dr. Anderson opined that Janssen's limitations would likely produce good and bad days, and that she would be able to manage benefits on her own best interest. AR 295. He opined that she suffered from extreme limitations in her ability to carry out detailed instructions, as well as to accept instructions and appropriately respond to criticism. AR 293. Additionally, Dr. Anderson opined that Janssen had marked limitations in her ability to understand and remember

4

short and simple instructions, maintain attention and concentration, tolerate normal levels of stress, and complete a normal work day. *Id.* Dr. Anderson gave Jannsen a Global Assessment of Functioning overall score of 55. AR 292.

On August 25, 2014, Brandon Scott Dugan, Pys.D., also completed a Medical Source Statement opinion on Janssen's residual function capacity. AR 307–10. Dr. Dugan's prognosis of Janssen was guaraded. *Id.* at 307. He opined that the physical impairments or medical conditions that were contributing to or causing Janssen's mental health limitations were: obesity, kidney failure/transplant, and chronic pain. *Id*. Specifically, Dr. Dugan opined that Janssen had little or no limitation in remembering location, understanding simple instruction, carrying out detailed instructions, sustaining an ordinary routine without special provisions, making simple work-related decisions, interacting appropriately with the general public, asking simple questions or requesting assistance, being aware of normal hazards, and taking appropriate precautions. AR 308. Dr. Dugan found that Janssen had moderate limitation in maintaining attention and concentration for more than two-hour segments, working in coordination with others, getting along with coworkers, accepting instruction, maintaining socially appropriate behavior, responding appropriately to change in the work setting, traveling to unfamiliar places or using public transporation, and setting realistic goals. *Id*. Dr. Dugan opined that Janssen had serious limitations in performing routine activities, maintaining a regular schedule, completing a work day without interruption, and tolerating normal levels of stress. *Id*.

Russel J. Ludeke, Ph. D., L.P., and Ray M. Conroe, Ph. D., L.P., non-examining state-agency psychological consultants, also opined on Janssen's residual functional capacity. *See* AR 87–90, 102–105. Dr. Ludeke opined that Janssen had no significant limitation in her ability to remember

locations and work-like procedures, understand and remember short and simple instructions, carry out detailed instructions, maintain a schedule and be punctual, work in proximity with others, make simple work-related decisions, ask simple questions, get along with co-workers, maintain socially appropriate behavior, travel in unfamiliar places, and set realistic goals. AR 87–89. Dr. Ludeke found that Janssen had only moderate limitation in being able to understand and remember detailed instructions, interact appropriately with the general public, and respond appropriately to changes in a work-setting. *Id.* Dr. Ludeke further opined that Janssen retained sufficient mental capacity to concentrate on, understand, and remember routine instructions, but that her ability to deal with co-workers on an ongoing basis and handle stress and pressure at work was reduced. AR 89–90.

Dr. Conroe opined that Janssen was not significantly limited in her ability to remember locations and work-like procedures, understand and remember short and simple instructions, carry out detailed instructions, maintain a schedule and be punctual, sustain an ordinary schedule, work in coordination with others, make simple work-related decisions, ask simple questions, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers, maintain socially appropriate behavior, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, and set realistic goals. AR 103–104. Dr. Conroe found that Janssen was moderately limited in her ability to understand and remember detailed instructions, maintain attention and concentrate for extended periods, complete a normal workday without interruptions, and interact appropriately with the general public. *Id.* Dr. Conroe opined that while Janssen had retained sufficient mental capacity to concentrate on, understand, and remember routine repetitive instruction and carry out routine step tasks, her ability to deal with coworkers, and handle stress and pressure was reduced. AR 104.

**C. The Commissioner's Decision**

On May 26, 2015, the ALJ issued a decision denying Janssen's request for benefits. AR 10–23. In his determination that Janssen was not disabled, the ALJ followed the five-step sequential process established by the Social Security Administration ("SSA"), outlined in 20 C.F.R. §§ 404.1520 and 416.920(a).

The first step in the sequential evaluation is to consider the claimant's work history to determine whether she has engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has performed substantial gainful activity, she is not disabled. *Id.* At step one, the ALJ found that Janssen had not engaged in substantial gainful activity during the period of her alleged disability. AR 10–12.

The second step in the sequential evaluation is to determine whether the claimant has a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). For the purpose of satisfying the regulations, "severe" impairments are those that significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 404.1509. At step two, the ALJ found that Janssen had the following severe impairments: major depressive disorder, recurrent, moderate, and posttraumatic stress disorder.[1] AR 12. In making this determination, the ALJ considered the opinions of Charles T. Grant, M.D., and Gregory H. Salmi, M.D., the non-examining state agency medical consultants, Janssen's treating physicians Brandon Scott Dugary, P.H.D. and Keith Courtney M.D., as well as Janssen's treating

---

[1] Janssen does not allege any error regarding the ALJ's determination of these disabilities. Therefore, the Court adopts the ALJ's factual findings as to these impairments and does not reiterate them in its statement of facts.

medical records and evidence. AR 12–15. The ALJ found that while Janssen had a urinary tract infection and received treatment for a bilateral shoulder pain, that neither condition caused her more-than-minimal limitations for a continuous period of at least 12 months. AR 13. Additionally, the ALJ accorded little evidentiary weight to Dr. Keith's opinions regarding Janssen's back pain, diabetes mellitus, hypertension, and hyperlipidemia, finding that these opinions were not consistent with the evidence taken as a whole. AR 14–15.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), .1525, .1526; 416.920(d), .925, .926. At step three, the ALJ determined that Janssen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 15–16.

Where the ALJ determines that a claimant's impairments do not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's residual functional capacity ("RFC"). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. Here, the ALJ concluded that Janssen had an RFC to:

> [P]erform a range of work at all exertional levels, albeit with all of the following non-exertional limitations: she can concentrate on, understand and remember routine and repetitive instructions; she can carry out routine and repetitive 3- and 4-step tasks with adequate persistence and pace; she can handle superficial contact with coworkers, not sustained, close contact with coworkers; and she can handle stress associated with 3- and 4-step limited detail work, not multi-detailed or complex work.

AR 16–17. In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence" as well as opinion evidence. AR 17. The ALJ found "although [Janssen]'s medically determinable impairments reasonably could be expected to cause the alleged symptoms, [Janssen]'s representations, concerning the intensity, persistence, and functionally limiting effects of the symptoms alleged, are not credible because they are not generally consistent with evidence overall." AR 18. The ALJ specifically found that Dr. Ludeke and Dr. Conroe found that Janssen "had a mental residual functional capacity to concentrate on, understand, remember, and carry out routine and repetitive 3-to-4 step instructions and tasks, handle supervision contact with coworkers, and tolerate the routine stressors of a routine and repetitive 3-4 step limited detail work setting." *Id.* Further, the ALJ found that their opinions were generally consistent with the evidence overall, including Janssen's adult function reports, as well as her treating medical records. *Id.*

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either her past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), .1560(b), .1565; 416.920(f)–(g), .960(b), .965. If the ALJ determines that the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. If the claimant cannot perform her past relevant work, then the "burden of proof to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Nevland v. Apfel*, 204 F.3d 853, 856 (8th Cir. 2000).

At step four, the ALJ found that Janssen had no past relevant work. AR 21. The ALJ, however, at step five, determined that there were jobs that exist in significant numbers in the regional economy that a person with Janssen's RFC could perform. AR 22. Specifically, Janssen was

9

able to perform work such as a laundry folder, agricultural produce sorter, and hand bander. *Id.* This was based on the VE's testimony, which the ALJ found consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the ALJ's findings at step five that there were other adequate jobs available to Janssen, the ALJ denied Janssen's application for SSI, and found that Janssen was not under a disability at any time from her alleged onset date through the date of the hearing. AR 22–23.

### III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938) (quotations omitted)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. Therefore, this Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV.  CONCLUSIONS OF LAW

In challenging the ALJ's decision, Janssen argues that the ALJ erred by: (1) finding that Janssen's physical impairments did not meet the Agency's step 2 "severe" standard; and (2) failed

11

to consider the medical opinions of Drs. Anderson and Dugan consistent with regulations, Agency policy, and Eighth Circuit precedent. *See, e.g.*, ECF No. 17.

**A.   Substantial evidence supports the ALJ's determination that Janssen's physical impairments were non-severe.**

As discussed above, the ALJ must determine at step two of the sequential evaluation process "whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); *accord* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii). The claimant bears the burden of demonstrating that her impairment is severe. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Here, the ALJ concluded that Janssen suffered from the following severe impairments: major depressive disorder, recurrent, moderate, and post-traumatic stress disorder. AR 12. Plaintiff argues that the ALJ erred in finding that Janssen's physical impairments did not meet the *de minimis* threshold standard at step two. *See* ECF No. 17 at 5–9. Specifically, Plaintiff asserts that the Agency's consultants did not have access to Janssen's full medical records, which includes the opinions of Janssen's treating physician, who diagnosed her with chronic kidney disease, hypertension, low back pain (degenerative disc disease), and type II diabetes. *Id.* at 12. Plaintiff further argues that the ALJ failed to account for all of Janssen's impairments in the RFC finding leading to a failure to present any physical limitations to the vocational expert and resulting in Janssen being denied benefits. *Id.* at 13–15. The Commissioner argues that the ALJ properly concluded that Janssen's physical impairments were non-severe, and assuming an error was made, the error was harmless. *See, e.g.*, ECF No. 20.

In making his determination, the ALJ considered Janssen's documented physical impairments, which included osteoporosis in her feet, hammertoes, acute lumbar sprain, bilateral

shoulder pain associated with bursitis, urinary tract infection, and her past medical history associated with her renal transplant. AR 12–15. The ALJ found that these physical impairments considered together or in combination, did not cause her more-than-minimal limitations in basic work-related functioning for a continuous period of at least 12 months. AR 12. Plaintiff does not dispute the Agency's non-examining medical consultants' findings, but instead argues that their opinions should be discounted because they did not have access to Janssen's full medical records. ECF No. 17 at 11–15. According to Plaintiff, Dr. Keith's opinions demonstrate that Janssen's physical impairments were severe as to meet the *de minimis* threshold at step two. *Id*. at 14. Plaintiff, however, fails to cite to any physical impairments in Janssen's medical records, not considered by the ALJ or the agency's non-examining medical consultants, whereby it was concluded that the impairment singularly, or in combination with others, would have more-than-minimally limited Janssen's basic work-related functions. To the contrary, the Court finds that substantial evidence existed in the record to support the ALJ's determination that Janssen's physical impairments were not severe.

Further, even if we were to assume that the ALJ erred in his determination that Janssen's physical impairments were non-severe, the error is harmless. Had the ALJ denied Janssen's claim for benefits at step two, the ALJ's impairment determination could be reviewed. However, at step two, the ALJ found at least one severe impairment, and proceeded to step three. *See* AR 12–15.

In addition, the Court notes that the ALJ considered the entirety of the record in fashioning Janssen's RFC. AR 10–23 ; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Plaintiff argues Drs. Anderson and Dugan established a far greater, and more detailed limitation, than are accounted for in the ALJ's mental RFC findings, and satisfies Janssen's burden of proof in demonstrating that she is disabled. ECF No. 17 at 20. An ALJ's RFC determination should be based

on all of the evidence in the record, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). An ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all the relevant evidence[,] . . . [but] a claimant's [RFC] is a medical question" that requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). Here, the record shows that the ALJ's RFC determination included, at minimum, some medical evidence. This Court's review of the ALJ's factual determination is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997), nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Because the ALJ's RFC determination relied on a sufficient examination of the record, the Court concludes that substantial evidence exists to support the ALJ's RFC determination. *See id.*

## B.     The ALJ provided good reasons for giving limited weight to Dr. Anderson's and Dr. Dugan's opinions.

Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (citing *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008)). If, however, the treating physician's opinion "is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *Id.* (citing 20 C.F.R. § 416.927(c)). These factors include (i) the examining relationship, (ii)

14

treatment relationship, (iii) supportability, (iv) consistency, (v) specialization, and (vi) other factors. See 20 C.F.R. § 416.927(c). Opinions of treating physicians . . . may be given limited weight if they are . . . inconsistent with the record." *Id.* (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)). Additionally, "a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement." *Hamilton*, 518 F.3d at 610 (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir.1996)).

Plaintiff argues that the ALJ erred by failing to properly analyze the medical opinions of Drs. Anderson and Dugan. *See* ECF No. 9–22. A treating physician's opinion is generally entitled to greater or controlling weight in an RFC assessment. *See* 20 C.F.R. § 404.1527(c)(2). The rationale is that a physician who regularly interacts with a patient tends to have a more complete and thorough understanding of the patient's medical condition, than would a consulting or examining physician. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). However, that entitlement is not absolute. *See Bentley v. Shalala*, 52 F.3d 784, 785–86 (8th Cir. 1995). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence on the record." *Hamilton*, 518 F.3d at 610.

Here, the ALJ provided sufficient reasons for assigning little evidentiary weight to Drs. Anderson and Dugary's opinions; finding that they were inconsistent with Janssen's own function reports, each other, and the record as a whole. *See, e.g.*, *Gaddis*, 76 F.3d at 895 (concluding that an ALJ may assign lower weight to a treating physician's opinion if the record as a whole is inconsistent with the treating physician's findings). For example, the ALJ gave little weight to Dr. Anderson's opinion because it was overall inconsistent with Dr. Anderson's own finding of a GAF

score of 55. *See* AR 16, 292–295. While Dr. Anderson found that Janssen had major limitations in carrying out detailed instructions, appropriately to criticism from supervisors, and marked limitations in understanding simple instructions, maintaining attention, and completing a normal work day, AR 293, as the ALJ noted, a GAF score of 55 is generally consistent with moderate symptoms or limitations in functioning. AR 16. Further, the ALJ found that Dr. Anderson's and Dr. Dugan's assessments were inconsistent with each other. While Dr. Anderson opined that Janssen has marked limitations in her ability to understand and follow simple instructions and extreme limitations in her ability to carry out detailed instructions, AR 293, Dr. Dugan opined that Janssen had only mild or no limitation in Janssen's ability to understand and remember detailed instructions, and no limitations in her ability to carry out detailed instructions. *Id.* Further, the ALJ found that their opinions were inconsistent with Janssen's own function report, which provided that she lived alone with her husband in an apartment, had no problem dressing, bathing, caring for herself, and went grocery shopping once a month for two to three hours. AR 217–224. The ALJ found that this was more consistent with the opinions of the state agency psychologists Drs. Russell Ludeke and Ray Conroe. Drs. Ludeke and Conroe opined that Janssen had no significant limitations on her ability to remember locations and understand simple instructions, and only had moderately limited ability to maintain attention and concentrate for extended periods of time. AR 87– 89.

   Even if the Court was to find that the ALJ should have given Drs. Anderson and Dugan's opinions controlling weight under the guidelines, any error the ALJ may have made was harmless as Plaintiff has not presented any evidence that but for this error, the ALJ would have decided Janssen could not perform sedentary work. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the claimant] must provide some indication that the ALJ

16

would have decided differently if the error had not occurred."). After reviewing the ALJ's opinion, it is clear to the Court that the ALJ found the opinions of Dr. Anderson and Dr. Dugan were inconsistent with the record as a whole. It is well established in the Eighth Circuit that "an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000). Plaintiff has not met his burden to show that had the ALJ given Dr. Anderson's and Dr. Dugan's opinions controlling weight, the ALJ would have made a different RFC determination.

## V.  CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Here, substantial evidence supports the ALJ's determination that Janssen was not disabled.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**;

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**


DATED: March 22, 2018                              *s/Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge